Jacob Markowitz, J.
Plaintiff brought this action for judgment declaring that it has the absolute right to an order of eviction and to recover possession of commercial and business space now occupied by defendants, upon the ground that it desires to withdraw the space permanently from the rental market. At the commencement of the trial, the action was discontinued against Diana Coffey, Paul Cohen, Retired Postal Employees Association, Inc., S. Kivowitz Sons, Inc., Aaron Herschbain and Jack P. Peltz, and Irving Sabo was added as a party defendant. Plaintiff acquired possession by long-term leases of the entire block bounded by Broadway on the east, University Place on the west, 9th Street on the north and 8th Street on the south. The leases covering the easterly and westerly sections of the block required that the lessee obtain possession thereof, demolish the existing structures and rebuild. This has been accomplished to the extent that the easterly building has been completed and the westerly building is in course of construction. The lease covering the center section required such repossession and commencement of construction by the year 1965, since there were different conditions confronted, including outstanding leaseholds expiring in 1957 and 1960. The trial of this action proceeded against those statutory tenants occupying commercial or business space and still in possession, since plaintiff desires to demolish the structures thus occupied because of their age, condition and criminal and economic hazards.
*939 Defendants rested on plaintiff’s case while the testimony and proof offered in behalf of plaintiff were directed to the question of good faith.
Rent control acts enacted during and since the second World War have adopted the method of freezing rents as basis for controlling exorbitant rents. Some, like the Federal acts of 1947-1948, have provided that owners are not required to offer their space for rent. The present State Residential Rent Law (§ 10, subd. 4; L. 1946, ch. 274, as amd.) provides that an owner is not required to offer for rental, but withdrawal may be made only after prior written approval of the rent commission. No similar provision is contained in the Commercial or Business Rent Laws (L. 1945, ch. 3, as amd.; L. 1945, ch. 314, as amd.). It may be observed that to honor the basic and constitutional right to withhold property from use despite the emergency and the regulatory acts enacted from year to year would entail no substantial risk of a strike on the part of property owners. On the other hand, the inclusion of a provision in any act assuring the right not to offer is not a grant but rather the reassertion of the basic right of property for the purpose of imposing some temporary and constitutional restraint upon its operation. But every such restraint, as expressed in the enactments, has been to cut down the owner’s freedom of use and to contract, not to abolish it in toto or to withdraw in express language the choice to use or not to use. In addition, the restraints have been relaxed as the severity of the emergency wanes. Accordingly, an increasing measure of decontrol has entered into all rental markets. In the area of housing accommodations varying conditions of withdrawal and of proposed demolition and reconstruction have arisen by reason of subdivision 4 of section 10 and sections 58 and 59 of the Rent and Eviction Regulations promulgated in enforcement thereof. In the commercial and business space acts provision is made for proposed demolition and reconstruction (Commercial Rent Law, § 8, subds. [c], [cc] ; Business Rent Law, § 8, subds. [c], [cc]), but nothing therein contained refers to complete withdrawal.
Subdivision 4 of section 10 of the State Residential Rent Law and sections 58 and 59 of the Rent and Eviction Regulations have been considered in many cases in which attempts have been made to challenge their constitutionality (Matter of Recknagel v. Finkelstein, 193 Misc. 31, affd. 275 App. Div. 684; Matter of Wong v. Finkelstein, 193 Misc. 289, revd. 275 App. Div. 686, affd. 299 N. Y. 205; Suppus v. Bradley, 278 App. Div. 337; Loab Estates v. Druhe, 300 N. Y. 176; Matter of New York Univ. v. Temporary State Housing Rent Comm., 304 N. Y. 124; Matter *940 of Klein v. McGoldrick, 124 N. Y. S. 2d 460; Matter of Emray Realty Corp. v. McGoldrick, 307 N. Y. 772). There has been disagreement upon the question whether an intended complete withdrawal may be regulated (Matter of Finnerty v. McGoldrick, 2 Misc 2d 157; Matter of New York Univ. v. McGoldrick, 205 Misc. 790; see dissenting opinions in Recknagel and Wong cases, supra). In any event, the right of a landlord to evict his tenants and to devote his property to decontrolled or uncontrolled uses is established (Bowles v. Willingham, 321 U. S. 503, 517; Matter of New York Univ. v. Temporary State Housing Rent Comm., 304 N. Y. 124, supra). The basic right was reasserted by the Court of Appeals in Matter of Emray Realty Corp. v. McGoldrick (supra). In dismissing the appeal, the court stated (p. 773): “ While a constitutional right to withdraw real property from the rental market exists in an appropriate case, this appeal must be dismissed upon the ground that the asserted constitutional questions are not directly and necessarily involved in the decision appealed from ”.
It is reasonable to suppose that an appropriate case in the present state of the statute law is more readily reached in the commercial and business space areas than in the housing area, for ‘ ‘ In the residential rent law there is a higher public interest protected and a different class of persons for whose benefit the State has chosen to exercise its police power. In the case of the commercial rent laws we have a matter of balancing economic interests that may not always be in harmony, but not relating to so fundamental a matter as basic shelter for human beings.” (Garay v. Todros, 282 App. Div. 126, 128-129.)
It would seem to follow therefore that the continued right to dedicate property to such uses does not and cannot exclude the right to dedicate the property to no use whatever. Here, it is conceded that the landlord purposes to demolish the buildings occupied by the statutory tenants. The existing space will be withdrawn from the rental market and destroyed. Plaintiff invites an injunctive provision compelling such destruction. It is a fact that a purpose to use the unimproved land as a parking lot was suggested by defendants and in addition plaintiff is indeed required to build in 1965. Nevertheless, these factors do not diminish the actual present purpose to withdraw and its legal effect. More particularly, eviction and repossession would not do violence to the purpose of the commercial and business space acts, since subdivisions (cc) of sections 8 of the Commercial Bent Law and 8 of the Business Bent Law, effective April 3, 1952, provide for the instant contingency in which the *941 plaintiff by reason of existing circumstances desires, but is unable, to build until 1960. Under those sections the owner is authorized in the interim to use his unimproved property as a parking lot. Moreover, the proposed use is noncontrolled and therefore the proposed plan amounts in law to a withdrawal. Consequently the court reaches the conclusion that plaintiff is acting in good faith in all particulars but even independent of that finding plaintiff is entitled to exercise its right to withdraw.
Plaintiff has coupled its claim with a prayer for incidental relief that it be awarded possession of the subject premises. Since it prevails on the main issue, an award of possession would follow as a matter of course. In addition, the court is authorized to grant the incidental relief in the circumstances here, and it would seem, therefore, to be practical and appropriate to grant full relief. Plaintiff has consented that delivery of possession may be stayed six months. Accordingly, plaintiff is entitled to prevail and to a declaration of rights in its favor as well as an award to possession with six months’ stay of execution.
This will constitute the court’s decision. Settle decree accordingly.