In the Matter of Asco Equities, Inc., Respondent, against Joseph D. McGoldrick, as State Rent Administrator, Appellant.

First Department, February 15, 1955.

*Beatrice Shainswit* of counsel (*Walter S. Fried,* attorney), for appellant.

*Morris Wagman,* attorney (*Irving Sheinfeld* with him on the brief), for respondent.

BREITEL, J. The Rent Administrator appeals from an order at Special Term, in an article 78 proceeding, annulling the administrator's denial of certificates of eviction to the landlord to remove tenants. Special Term held that landlord had an unqualified right to withdraw his property from the rental market and that, insofar as section 59 of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission

imposed any conditions other than good faith as to the landlord's expressed intention, it was invalid. For reasons that will be set forth, the order should be reversed, and the determination of the Rent Commissioner reinstated, but with leave to the landlord to make a new application under the modified section 59.

Landlord owns a three-story building containing two six-room apartments and a ground floor store. After an application for a rent increase, which was granted only in part, and with which landlord was dissatisfied, it made the present application for certificates to evict the two occupant tenants, on the ground that it wished to permanently withdraw the premises from the rental market. In the administrative proceeding landlord claimed that $14,000 would be required to rehabilitate the building, but the Rent Administrator found that this claim was not supported by the evidence. Apart from this unsustained claim, the proof showed that the property was a profitable one. There was also no showing or claim that there were any burdens or hardships on landlord in the operation of the property. Landlord relies, however, in the article 78 proceeding, on its asserted right to withdraw its property from the rental market, unconditionally and unqualifiedly, except for the genuineness of its intention to so withdraw its property from the market.

The statute provides: " Nothing in this act shall be construed to require any person to offer any housing accommodations for rent, but housing accommodations already on the rental market may be withdrawn only after prior written approval of the state rent commission, if such withdrawal requires that a tenant be evicted from such accommodations ". (State Residential Rent Law, § 10, subd. 4; L. 1946, ch. 274, as amd. by L. 1951, ch. 443.)

The question raised is whether the right to withdraw occupied housing accommodations is substantially qualified by the requirement that the landlord must obtain certificates of eviction for the occupant tenants with the " prior written approval of the state rent commission ", meaning that the landlord must justify the withdrawal of the property from the rental market; or whether that approval must be forthcoming if the landlord reasonably satisfies the rent commission that he intends in fact to effect such withdrawal. Put another way, the question is whether the landlord must justify to the rent commission his withdrawal or whether he merely need satisfy the rent commission that he in fact intends what he proposes to do. For reasons

that will appear, he need only show the latter, but, on the other hand, he must do so by objective criteria.*

Pursuant to its broad rule-making power the State Rent Commission enacted the following regulation to implement the quoted statutory provision:

"Section 59. *Withdrawal of occupied housing accommodations from rental market.*

"A certificate shall be issued where the landlord establishes that he seeks in good faith to permanently withdraw occupied housing accommodations from both the housing and non-housing rental markets without any intent to rent or sell the housing accommodations. No certificate shall be issued under this section unless the landlord establishes that he seeks to recover possession of the housing accommodations because of an immediate and compelling necessity and exceptional circumstances and the continued operation of the housing accommodations by the landlord will impose undue hardship on him, or where the granting of the certificate is inconsistent with the purposes of the Act."

The statute and the regulation have been sustained as constitutional and valid. (*Suppus* v. *Bradley,* 278 App. Div. 337.)

The regulation has, since the commencement of this proceeding, been further amended, and reference will be made to that below.

From a reading of the statute, the first proposition that is apparent is that in substance a landlord has a right to withdraw his property from the rental market. (See *Matter of New York Univ.* v. *Temporary State Housing Rent Comm.,* 304 N. Y. 124, 129.) But his intention must be actual and genuine. The requirement that he obtain certificates of eviction with the prior approval of the State Rent Commission is to assure that the withdrawal from the rental market is genuine and not a subterfuge to remove occupant tenants.

Obviously the rent commission has the burden and the responsibility of determining the good faith of the intention expressed by the landlord. It would be senseless to hold that the rent commission is bound by the landlord's bare assertion. That would be an illusory control indeed. Consequently, the rent commission must be satisfied, on objective grounds, that a landlord intends as he says. The good faith of that expressed inten-

---

* Compare, however, *Matter of New York Univ.* v. *Temporary State Housing Rent Comm.* (304 N. Y. 124, 129) and *Matter of New York Univ.* v. *McGoldrick* (205 Misc. 790, 795). See especially *Matter of Emray Realty Corp.* v. *McGoldrick* (307 N. Y. 772).

tion is easily established by showing immediate and compelling necessity, economic or other hardship, or other extraordinary circumstances which, in a rational framework, justify or explain or make understandable the landlord's conduct in withdrawing his property from the rental market. While it may be that a landlord has a constitutional or statutory right to be economically perverse, the rent commission has the right to assume that that is not the general state of affairs with landlords. Hence, the rent commission has the power to use objective standards of intention, so long as those standards are comprehensive and accord with economic and social experience in the real estate field. In exercise of that power, it has the right to promulgate a regulation, like section 59, which articulates these objective standards, so that all may know the bases upon which the rent commission will determine the absence or presence of good faith.

If the foregoing analysis be sound, then the landlord may not prevail unless it shows that, on the basis of the regulation or other equally valid and objective standards, its good faith has been demonstrated. If the landlord can show such objective basis outside the questioned regulation, then the regulation is inadequate, and therefore, invalid, because it does not comprehend the scope of the statute which defines the limit of its power. For the landlord to merely assert '' I intend thus and you cannot prove that I do not '' is not enough. Law is much too experienced to give such finality to the words of mortal men. It may look to the circumstances and see whether the assertion is credible in the light of those circumstances. It cannot search the subjective mind, but it can require that the assertion made with respect to the subjective mind meets the tests of practical reality, before it is to be believed. The regulation does no more than that. It, in effect, requires that the landlord show some basis in economics, or in psychological or social needs, for the action he proposes. This is not in order to approve or justify that purpose, as sound or proper, but to give credit to the announced purpose or assigned reason.

Any other view of the matter would entail the serious risk that landlords would, on the asserted intention of withdrawal from the market, procure the eviction of tenants for one improper cause or another, only to replace the premises on the market a short time thereafter. For this there would be only a doubtful money remedy to the evicted tenant, and no way of restoring the housing accommodation to him. Counsel for the landlord very candidly conceded as much on the argument in this appeal.

Actually, the record in this case shows that landlord first claimed a high cost of rehabilitation for the premises as a reason for withdrawal. After the rent commission found against it as to that fact, it has sought to rely on its absolute right to withdraw. This is, alone, as the rent commission specifically found, basis for rejecting landlord's claim of good faith, especially in the light of the profitable character of the property and the absence of any claimed or proven burden or hardship.

Since, however, section 59 has been amended, but only in providing greater detail as to the grounds for establishing the good faith of intentions to withdraw from the rental market, and since landlord may have been mistaken in relying on its bare assertion of intention to withdraw, it should have leave to make a new application to the rent commission. In making such application, landlord will be required to meet the objective standards set up in the regulation, or show that there is another reasonable objective basis for its intention which is not comprised by the regulation, in which event it may attack the regulation as invalid.

The order should be reversed and the order of Rent Administrator reinstated, with leave to landlord to make a new application under section 59.

PECK, P. J., COHN and BASTOW, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to appellant, the determination of the State Rent Administrator reinstated and the proceeding dismissed, with leave to landlord to make a new application under the modified section 59.